IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ELLEN D. KENNEDY,**

   Plaintiff

v.     CIVIL NO. JKB-15-0346

**ADF MIDATLANTIC, LLC** *et al.***,**

   Defendants

## MEMORANDUM AND ORDER

### *I. Background*

Plaintiff Ellen D. Kennedy brought this lawsuit against her former employer, originally identified as ADF Pizza I, LLC, and later identified as ADF MidAtlantic, LLC ("ADF"), as well as against Thomas Parks, Jr., her former supervisor. (Compl., ECF No. 1; 2nd Am. Compl., ECF No. 23.)[1]  Kennedy has sued Defendants for interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; retaliation for assertion of her rights under the FMLA; defamation *per se*; violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and its Maryland counterpart; and wrongful discharge. (Compl.)  Defendants have moved to dismiss or, in the alternative, to stay the litigation and to compel arbitration.

---

[1] Defendants contributed to the confusion as to the corporate Defendant's proper identity by consistently identifying Plaintiff's former employer as ADF Pizza I, LLC, before discovering its true identity (Defs.' Mot. Ext. Time, ¶ 6, ECF No. 15).  See correspondence by Plaintiff's counsel to Defendants' counsel of April 22, 2015, referring to Defendants' prelitigation correspondence, Defendants' motion to compel arbitration, W2s, and paystubs, all referring to Plaintiff's employer as ADF Pizza I, LLC. (ECF No. 15-1 at p. 3; *see also* Pl.'s Opp'n, Ex. 6, W2 forms, ECF No. 31.)  Defendants have asserted ADF Pizza I, LLC, is the entity through which payroll services for ADF MidAtlantic, LLC, are administered. (ECF No. 15-1 at p. 4.)  ADF Pizza I, LLC, has been dismissed without prejudice from the case.

(ECF No. 28.)  The matter has been briefed (ECF Nos. 29 – 32), and no hearing is necessary, Local Rule 105.6 (D. Md. 2014).  The motion will be denied.

## II. *Applicable Standard*

It has been said by Judge Bennett of this Court that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (internal quotation marks omitted).  Further, he has said, if "the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment." *Id.*  When addressing a motion for summary judgment, the Court follows this standard:

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)).  The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.  The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial,

Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

Even though the summary-judgment standard can be applied generally in the current context, the Court notes that Defendants have relied, in part, upon their arguments in which they make factual assertions unsupported by any evidence. In such circumstances, the Court finds the standard for a motion to dismiss—under which the Court accepts as true all factual allegations of the complaint—to be implicated.

## III. *Allegations of the Complaint*

Kennedy was formerly employed at the Pizza Hut store, located at 100 Railway Lane, Hagerstown, Maryland (the "Railway Store"). (2nd Am. Compl. ¶ 4.) Her employment began in or about May 1992 and ended abruptly on July 11, 2014, when she was terminated. (*Id.* ¶¶ 4, 20, 21.) In December 2006, Kennedy was employed by ADF as a server. (*Id.* ¶ 9.) She was promoted to the position of Restaurant General Manager of the Railway Store in March 2010. (*Id.*) Kennedy alleges she was a model team member of ADF and almost always worked more than 50 hours per week, but she was never paid overtime. (*Id.* ¶ 10.) She also alleges the Railway Store was recognized for the quality of its operations. (*Id.* ¶ 11.)

Kennedy alleges she worked a 16-hour shift on July 4, 2014, and after working that shift, she was notified either late that night or in the early morning of July 5 that her father's health was failing. (*Id.* ¶ 12.) Kennedy's elderly father was the caretaker for Kennedy's mother, who has lung cancer; Kennedy's parents lived in South Carolina, and she provided long-distance care and support to her mother. (*Id.*) Immediately after learning about her father's rapidly deteriorating health, Kennedy sent a text message to Defendant Parks, who was her immediate

supervisor and area coach, and advised him she would be driving to South Carolina that morning to move her parents into her home in Maryland. (*Id.* ¶ 13.) Thus, Kennedy's message gave Defendants approximately sixteen hours' notice of the need to have another employee cover her next shift due to her imminent travel plans. (*Id.*)

Parks responded to Kennedy's text message and told Kennedy she could not take leave from her Saturday, July 5th shift, but would have to wait until Tuesday, July 8th to take leave. (*Id.* ¶ 14.) Kennedy told Parks she was afraid her mother and/or her father would die before Tuesday, July 8th. (*Id.*) Parks's "suggested solution was that Mrs. Kennedy[] 'should pray.'" (*Id.*) Kennedy "[refused] to compromise her parents' health in favor of one shift that could be covered by another employee . . . [and] drove to South Carolina and moved her parents to Maryland." (*Id.* ¶ 15.) Kennedy alleges that Defendants found coverage for her shifts. (*Id.*)

After she returned to Maryland, Kennedy called the Railway Store and was told by her coworkers that Parks had falsely told them Kennedy had quit. (*Id.* ¶ 16.) She then alleges,

> Troubled by this, Mrs. Kennedy called Defendant ADF's Human Resources ("HR") department and spoke with Dawn Moynihan ("Mrs. Moynihan"), HR Leader at Defendant ADF. Ms. Moynihan told Mrs. Kennedy that she would immediately be placed on FMLA, and that Defendant Parks' comments and conduct violated Defendants' duties under the FMLA. Tellingly, Mrs. Moynihan advised Mrs. Kennedy that Defendant Parks needed to be "coached" on FMLA because he did not correctly handle Mrs. Kennedy's request for leave.

(*Id.* ¶ 17.) Further, Ms. Moynihan said she would provide Parks with the requisite FMLA forms for Kennedy to complete and return to ADF, and she instructed Kennedy to meet with Parks so she could obtain from him the necessary FMLA forms. (*Id.* ¶ 18.) Kennedy scheduled a meeting with Parks, as instructed by Ms. Moynihan, for July 11, 2014. (*Id.* ¶¶ 19-20.) Instead of providing Kennedy with the FMLA forms, however, Parks fired her, indicating that his reason

4

was that her "syrup counts"[2] were documented and/or calculated incorrectly. (*Id.* ¶ 21.) Kennedy alleges Parks's stated reason for firing her was a pretext and that her termination was retaliation for Kennedy's valid request for, and Ms. Moynihan's granting of, FMLA leave. (*Id.* ¶ 22.) Kennedy also alleges that the "syrup counts" were calculated and reported the same way over the previous four years of her employment, without any issue raised by Parks or anyone else. (*Id.* ¶ 23.)

After Parks fired Kennedy, he held individual and group meetings with her former coworkers and told them Kennedy had manipulated inventories and the "syrup counts," and his announcements at these meetings portrayed Kennedy as a thief. (*Id.* ¶ 24.) On the same day Kennedy was fired, Audrey Anderson, a delivery driver at the Railway Store, told a customer that Kennedy was fired because she was stealing from ADF. (*Id.* ¶ 25.) Kennedy alleges Anderson's falsehood was not an isolated incident (*id.*), and Kennedy's job search for a replacement position has not been fruitful (*id.* ¶ 26).

*IV. Analysis*

Under the Federal Arbitration Act ("FAA"), "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Consequently, a suit or proceeding brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" must be stayed by the court upon application by one of the parties and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3.

---

[2] Referring to types and quantities of soda fountain syrup present in the restaurant at the end of each day. (*Id.* n.2.)

"Whether a party agreed to arbitrate a particular dispute is an issue for judicial determination to be decided as a matter of contract." *Johnson v. Circuit City* Stores, 148 F.3d 373, 377 (4th Cir. 1998) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986)). State contract law provides the body of law applicable to the question of whether an agreement to arbitrate exists, as well as its scope, and the question of who is bound by the agreement. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). The parties have not referred to any state law other than Maryland law; as a result, the Court will apply Maryland contract law.

"Maryland adheres to the principle of the objective interpretation of contracts." *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007). Thus, if a contract's language is unambiguous, effect is given to its plain meaning and a court does "not contemplate what the parties may have subjectively intended by certain terms at the time of formation." *Id.* However, "parol evidence may be used to contravene the legal existence of a contract." *Id.* n.6. And if a contract is ambiguous, then "the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *John L. Mattingly Constr. Co., Inc. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010) (internal quotation marks omitted). Finally, when construing a contract, a court must resolve any ambiguities against the instrument's drafter. *Id.*

Defendants contend that, on November 18, 2006, Kennedy agreed to arbitrate all claims between them when she "executed an employment application for a position with ADF MidAtlantic." (Defs.' Mot. Supp. Mem. 2.) As evidentiary support for that statement, Defendants have produced a copy of a document to which they refer as the "Employment Application and Agreement to Arbitrate." (ECF No. 30.) Defendants' document is illegible, and

6

the Court ordered them "to supplement [the] motion to dismiss . . . with an improved copy of this exhibit. . . ." (Paperless Order, 7/21/15, ECF No. 33.) Instead of filing a properly redacted and legible exhibit, however, Defendants seem to have supplied the undersigned's chambers informally with a more legible, but unredacted, exhibit. Since the Court cannot consider evidence that is not in the record, the Court will redact the Social Security Number of the Plaintiff, pursuant to Federal Rule of Civil Procedure 5.2(a), and direct the Clerk to docket the exhibit, as redacted by the Court.

On the merits, it must be determined whether Plaintiff and Defendants agreed to arbitrate her claims in this lawsuit. Plaintiff contends they did not and Defendants, of course, contend otherwise. This issue has several aspects to it. First, Kennedy argues the document at issue was not really an employment application. To support this contention, she offers her affidavit in which she describes how the document came to exist:

> On or about November 18, 2006, my then-manager, Jayson, asked me to fill-out [*sic*] and sign the Employment Application which is the subject of the instant motion even though I had worked at the Railway Store for the prior fourteen (14) years. *Jayson told me that the Railway Store was about to be sold, and that the new buyer required biographical and background information related to each employee for its records.* Jayson did not disclose to me the identity of the buyer, or when the sale of the restaurant would occur. And, Jayson did not explain to me that by filling-out [*sic*] the Employment Application, which was a questionnaire, I would bind myself to arbitrate any disputes with my then-employer (Pizza Hut of Washington County No. 2) or any prospective, yet-to-be disclosed employer.
>
> By signing the Employment Application, I did not understand that I was agreeing to promise to arbitrate any future legal claims against Pizza Hut of Washington County No. 2 or anyone else. *By signing the Employment Application, I did not understand that I was applying for a position at Pizza Hut (since I had been working there for the past fourteen (14) years).* I was never fired from or re-hired to my job at Pizza Hut in November 2006. I continued to work at Pizza Hut until . . . I was terminated in July 2014.

(Kennedy Decl. ¶¶ 3, 4, June 21, 2015, ECF No. 31-1 (emphasis added).)

7

Courts have construed employment applications as contracts between employer and employee and have further considered whether arbitration agreements contained within employment applications bind the applicant or employee to arbitration. *See generally Circuit City Stores, Inc. v. Saint Clair Adams*, 532 U.S. 105 (2001); *Johnson*, 148 F.3d 373; *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547 (Md. 2006). But the only evidence before the Court indicates that Kennedy *was not* applying for employment. She was already employed; she was not told her present employment was or would be terminated; she was not told she had to reapply for her then-present position. All that she was told was that the future owner wanted to get biographical and background information for each employee for its records.

Defendants have made factual assertions in their briefing papers contradicting Plaintiff's recounting of how the document came to exist. For example, they state the following:

- "Plaintiff executed an employment application for a position with ADF MidAtlantic" (Defs.' Mot. Supp. Mem. 2);

- "ADF MidAtlantic offered Plaintiff the Agreement to Arbitrate by providing her the Employment Application and Agreement to Arbitrate, and she accepted ADF MidAtlantic's offer by executing the agreement and commencing employment" (*id.* 7);

- "It is undisputed that, on November 18, 2006, Plaintiff executed an Agreement to Arbitrate **within the context of an application for employment**, manifesting her intent to arbitrate claims arising out of her employment" (*id.* 11);

- "Plaintiff does not dispute that, prior to executing the Agreement to Arbitrate, she was informed by her then manager that the Railway Restaurant was about to be sold, and that the buyer required that she (and the other employees at the Railway Restaurant) fill out a new application" (*id.* 12);

- "Plaintiff does not dispute that, prior to executing the Agreement to Arbitrate, she was informed that the Railway Restaurant was about to be sold, and that the buyer required that she fill out a new application and new hire paperwork" (Defs.' Reply 7);
- "[T]he language in the Employment Application and Agreement to Arbitrate repeatedly identifies that the document is an employment application on the top of the first page" (*id.*);
- "Plaintiff (and the other employees) was asked to complete and sign the Agreement to Arbitrate as a prerequisite to her employment with ADF MidAtlantic, prior to the decision to hire her for employment" (*id.* 8).

Defendants have not supported their cast on what Kennedy was told by her then-supervisor, Jayson, on November 18, 2006. Their *ipse dixit* in their briefing papers is insufficient basis for ruling in their favor. The Court concludes that no meeting of the minds occurred as to why Kennedy was asked to provide background and biographical information to her then-employer on November 18, 2006. The evidence before the Court suggests that the Railway Store employees were led to believe they were just providing information to update employment records, while ADF (who was not the operator of the Railway Store at that time) may have thought the Railway Store employees were applying for employment with it and thought it was an opportune time to get them to sign arbitration agreements.

Even if one could interpret this factual scenario as an agreement to arbitrate, the question arises as to the identity of the parties to the agreement. No one other than Kennedy signed the document. Near the top of the document, it is stated, "Throughout this application Pizza Hut, Inc. refers to the independent Pizza Hut, Inc. franchisee which operates this restaurant." (Court's Ex. A, ECF No. 34.) Defendants argue this language means present *and future* operators, but a

plain reading of the document indicates it only applies to the then-current "independent Pizza Hut, Inc. franchisee which operates this restaurant." The language is unambiguous. The "independent Pizza Hut, Inc. franchisee which operate[d] [the Railway Store] restaurant" on November 18, 2006, was Pizza Hut of Washington County No. 2, Inc. (Kennedy Decl. ¶ 6; s*ee also* Defs.' Reply 3 (indicating Kennedy's prior employer, Pizza Hut of Washington County No. 2, sold the Railway Store's assets to ADF MidAtlantic on November 27, 2006[3]).) Nothing in the document at issue indicates its terms will be applicable to successor franchisees. Furthermore, even if the word "operates" could be considered ambiguous, any ambiguity is construed against the drafter of the document—not Kennedy.

Although it is plain that ADF was not a party to any agreement with Kennedy to arbitrate, assuming *arguendo* that an arbitration agreement was created by the document at issue, it is still necessary to consider whether either Defendant can enforce the agreement as nonsignatories. ADF contends it is entitled to rely upon the doctrine of equitable estoppel for this purpose. It claims Kennedy should not be allowed "'to claim the benefit of the contract and simultaneously avoid its burdens.'" (Defs.' Reply 11-12; *see also* Defs.' Mot. Supp. Mem. 8.) The problem with Defendants' argument is that Kennedy is not, in this litigation, claiming any benefit of any contract. Nor is Kennedy seeking to hold Defendants to any obligation under any contract. Thus, it seems as if Defendants may be making a reverse argument: that Kennedy may theoretically invoke the doctrine of equitable estoppel against them and, therefore, Defendants are entitled to invoke it for her and thereby claim the benefit of being bound. This contention would appear to rest on nothing more than Defendants' desire to be bound by the putative

---

[3] Although Defendants have attached copies of an amendment to an agreement *to sell* (Defs.' Reply, unnumbered exhibit), they have failed to provide documentation showing the date of actual transfer, *i.e.*, when Pizza Hut of Washington County No. 2 was no longer the operator of the Railway Store. The evidence in the record indicates ADF MidAtlantic did not assume operational control of the Railway Store until late December 2006. (*See* Kennedy Decl. ¶ 6; Kennedy's 2006 W2 Forms, Pl.'s Opp'n Ex. 6.)

arbitration agreement. But a desire to be bound by an agreement is not the same as actually being bound by it. To the extent that Defendants may be trying to assert equitable estoppel against Kennedy, they have made no showing of detrimental reliance, a necessary element under Maryland law to invoke the doctrine, including in the arbitration context. *See Dickerson v. Longoria*, 995 A.2d 721, 742-43 (Md. 2010) ("To assert equitable estoppel, the asserting party 'must have been misled to his [or her] injury and have changed his [or her] position for the worse, having believed and relied on the representations of the party sought to be estopped.'" (Alterations in original)). *See also Carlisle*, 556 U.S. at 630-31 (who is bound by arbitration agreement is matter of state contract law; recognizing that a contract may bind nonsignatories under various traditional principles of state law, including estoppel). Any representations made by Kennedy were made, if at all, to Pizza Hut of Washington County No. 2, Inc., not to ADF. ADF has failed to show it is entitled to enforce any arbitration agreement that may have existed between Kennedy and Pizza Hut of Washington County No. 2, Inc.

As for Parks, it is only in Defendants' reply that they assert he is entitled to enforce the arbitration agreement as ADF's agent. The argument is not properly before the Court because it is made for the first time in the reply. Regardless, since the Court has concluded ADF is not entitled to enforce the arbitration agreement, neither is Parks so entitled as ADF's agent. Moreover, the agreement's wording only encompasses "claims . . . aris[ing] between [Kennedy] and [Pizza Hut of Washington County No. 2, Inc.], its related companies, and/or their current or former employees."[4] No showing has been made that Parks was, as of November 18, 2006, either a current or former employee of Pizza Hut of Washington County No. 2, Inc., "the independent Pizza Hut, Inc. franchisee which operates this restaurant" on that date. Kennedy

---

[4] Repeatedly, Defendants misquoted this sentence as "current or *future* employees." (*See* Defs.' Mot. Supp. Mem. 2, 10 (twice this page) (emphasis added).)

alleged in her complaint that Parks became an employee of Pizza Hut, Inc., in 2007. (2nd Am. Compl. ¶ 3.) Parks is not entitled to require Kennedy to arbitrate.[5]

## V. Conclusion

For the foregoing reasons, the Court concludes Defendants are not entitled to compel arbitration of Kennedy's claims against them. Accordingly, Defendants' motion (ECF No. 28) IS DENIED. Defendants shall answer in the time allowed under Federal Rule of Civil Procedure 12(a)(4)(A). The Clerk is directed to docket Court's Exhibit A as ECF No. 34.

DATED this 27th day of October, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

---

[5] Even if the arbitration agreement were enforceable by Defendants against Kennedy, the Court notes that the agreement includes an unenforceable provision requiring Kennedy, but not Defendants, to jump over several hurdles before invoking arbitration. No mutuality of consideration exists for that "promise." *See Walther v. Sovereign Bank*, 872 A.2d 735, 744, 746 (Md. 2005) (court will refuse to enforce terms it finds unconscionable); *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 610 (4th Cir. 2013) (finding no mutuality of consideration in arbitration agreement's terms, including provision adding "additional procedures that only the buyer must perform prior to initiating arbitration"); *Raglani v. Ripken Prof. Baseball*, 939 F. Supp. 2d 517, 523 (D. Md. 2013) (no mutuality of consideration when only employee required to take affirmative steps in order to invoke arbitration). Also, if the arbitration agreement were enforceable, a question would still arise as to whether post-termination defamation by Parks falls within the scope of the agreement. Given the restrictive holding of the Maryland Court of Appeals in *Balt. Cnty. FOP Lodge No. 4 v. Baltimore County, Md.*, 57 A.3d 425, 432-33 (Md. 2012) (delineating what circumstances, for which arbitration may be invoked, survive expiration of underlying agreement), it is perhaps unlikely this claim would be covered by the arbitration agreement.